Argued January 20, reversed and remanded February 15, 1921.

# YREKA LUM. CO. *v.* LYSTUL–STUVELAND LUM. CO.

(195 Pac. 378.)

**Appeal and Error—Trial Court's Findings of Fact are Conclusive.**

1. Where an action was tried to the court without a jury, its findings of fact are conclusive on appeal.

**Appeal and Error—Interpretation of Writings not Binding on Appellate Court.**

2. The interpretation of writings is for the court, and hence a conclusion from written correspondence in action tried by the court without a jury is not binding on the appellate court as finding of fact.

**Customs and Usages—Custom Admissible to Explain Terms of Contract, Though not Pleaded.**

3. Under Section 718, Or. L., declaring that the terms of a writing are presumed to have been used in their general acceptation, but evidence is admissible that they have a technical, local or peculiar signification, evidence of a trade custom is admissible to define the terms of the contract, although not pleaded, but the rule is contrary where custom is relied on to vary the terms of the contract.

**Contracts—Offer must be Accepted as Made in Order to Create Contract.**

4. Where a contract is grounded on offer for acceptance, there is no agreement until the offer has been made and accepted in its very terms.

**Sales—Contract for Sale of Lumber Held Created by Offer and Acceptance.**

5. Where plaintiff sent a written order for 250,000 feet of lumber of general yard stock at a specific price, and the defendant seller replied that it would fill the order only at an advanced price, a further letter by plaintiff, directing the entry of the order for 250,000 feet at the advanced price, was an acceptance of the counter offer, and created a contract of sale; the description in the original offer being sufficient and applying to the counter offer and acceptance.

From Douglas: JAMES W. HAMILTON, Judge.

Department 1.

The substance of the complaint is that the parties entered into an agreement whereby the defendant should deliver to the plaintiff 250,000 feet of lumber at the price of $10.50 per thousand, to be paid by the plaintiff, and that the defendant refused to deliver the lumber, whereby the plaintiff has been damaged in a sum mentioned. Aside from admitting the corporate character of the defendant, the answer denies all of the allegations of the complaint, and makes no further defense. By agreement of the parties the

---

3. Admissibility of evidence of peculiar signification of word in locality where instrument was executed, see note in Ann. Cas. 1916C, 655.

On admissibility of evidence of custom to create an exception to a written contract, see note in 3 L. R. A. (N. S.) 248.

4. Acknowledging receipt of order for goods as an acceptance completing the contract, see note in 10 A. L. R. 683.

case was heard by the court without a jury, and subsequently the trial judge made and filed the following findings:

"First: That on the twenty-seventh day of March, 1917, plaintiff, through the United States mail, sent to defendant a letter, of which the following is a copy, to wit:

" 'Yreka, Cal., March 27, 1917.

" 'Lystul-Stuveland Lbr. Co.,
  " 'Glendale, Or.

" 'Gentlemen:

" 'Kindly enter our order for 10 more cars of yard stock at $10 f. o. b., Lystul, same as order already in. Make the order read, 10 cars of 25M each, or total of 250M. This will consist of general yard stock from 1-4 to 1-12, 2-4 to 2-12. We can use this at the rate of one car a week if you would like to make shipment that way. Kindly rush order already in.

" 'Respectfully,<br>" 'Yreka Lumber Co.<br>" 'By Chas. R. Cooley.'

"Second: That defendant having received said letter duly mailed to plaintiff on March 30, 1917, the following answer:

" 'March 30th, 1917.

" 'Yreka Lumber Co.,
  " 'Yreka, Cal.

" 'Gentlemen:

" 'Your letter of the 27th received relative to order for (10) car loads or 250 thousand ft. of general yard stock to be delivered at the rate of one car a week at the price of $10 per thousand f. o. b., Lystul, Ore.

" 'In reply will state owing to the increased cost of equipment and labor in operating we would have to realize a price of $10.50 f. o. b., Lystul, Ore., if we take on this order, and then we would be unable, as per your request, to make deliveries at the rate of a car a week, but may one in two weeks, although at times we may be able to get one in now and then

sooner. As it is now we are behind on orders we have on file and have considerable booked and contracted ahead. Weather conditions has been such that we have been unable to do much yet in logging or sawing owing to the snowy weather we are having. Will state the orders we have on file for you prior to this will be $10.00 f. o. b., Lystul. We are working on same and as soon as we have it out will forward same as soon as possible. Thanking you for submitting the order of the 27th and trusting the price we quote on same and conditions in which we could make deliveries proves satisfactory to you.

> " 'Yours very truly,
> " 'LYSTUL–STUVELAND LUMBER Co.
> " 'By ―――――――.'

"Third: The plaintiff on the fifth day of April, 1917, mailed to defendant the following letter, which was received by defendant in due course of the mail:

> " 'Yreka, Cal., April 5, 1917.

" 'Lystul-Stuveland Lumber Co.,
      " 'Glendale, Ore.

" 'Gentlemen:

" 'Kindly enter our order for 250M feet at $10.50, f. o. b., Lystul. We will make up order for first few cars in a few days.

> " 'Respectfully,
> " 'YREKA LBR. CO.'

"Fourth: That on May 5, 1917, defendant mailed to plaintiff the following letter, which was in due course of the mail received by plaintiff, to wit:

> " 'May 5, 1917.

" 'Yreka Lumber Co.,
      " 'Yreka, Cal.

" 'Gentlemen:

" 'During the next sixty days or thereabouts we will be getting in almost exclusively Sugar Pine logs. This will mean that we will get but very little fir in the meantime, practically none, and we will not be in any position to take care of sawing orders promptly, if at all, during this time. Orders for which we have

the specifications on file will clean up most of the yard stock now on hand.   If we have any items over after shipping out orders now on file we will advise you what they are and amount.

" 'Yours very truly,
" 'LYSTUL–STUVELAND LUMBER Co.'

"Fifth: On July 9, 1917, plaintiff mailed to defendant the following letter, which was by defendant received in the course of the mail, to wit:

" 'Yreka, Cal., July 9, 1917.
" 'Lystul-Stuveland Lbr. Co.,
" 'Glendale, Oregon.
" 'Gentlemen:
" 'We are enclosing our list for order of 250,000 feet.   Kindly get one car a week to us.
" 'Respectfully,
" 'YREKA LUMBER Co.'
" 'C. R. C.'

"Sixth: That the entire negotiations between plaintiff· and defendant relative to the subject matter of this action are contained in the correspondence hereinbefore set forth.

"Seventh: That defendant before accepting the order of plaintiff expected to receive a list specifying the dimensions of lumber ordered.

"Eighth: That defendant did not agree to ship or forward plaintiff the amount of lumber required by said order or any part thereof."

Judgment was rendered in favor of the defendant, and the plaintiff has appealed.

REVERSED AND REMANDED.

For appellant there was a brief and an oral argument by *Mr. Porter J. Neff.*

For respondent there was a brief and an oral argument by *Mr. George Neuner, Jr.*

BURNETT, C. J.—1. The findings, so far as they deal with facts, are conclusive upon this court. The only question open with respect to them is whether or not the findings of fact justify the conclusions of law embodied in the judgment. The facts relating to the contract are disclosed by the correspondence, and it is a statement of fact when it is said that the entire negotiations are contained in that correspondence. Since this is true, the court was not justified in reaching conclusions 7, "that defendant before accepting the order of plaintiff expected to receive a list specifying the dimensions of lumber ordered," and 8, "that defendant did not agree to ship or forward plaintiff the amount of lumber required by said order or any part thereof." In our judgment, what are called the seventh and eighth findings are but mere conclusions, not justified by the admitted facts of the correspondence.

2. It is a judicial function to construe the writings disclosed by the record, namely, the letters heretofore set forth. The one of March 27, 1917, from plaintiff to the defendant, is an offer to buy 250,000 feet of lumber at $10 per thousand. The one of March 30, 1917, from the defendant to the plaintiff, is a counter offer to sell lumber in the quantity named at $10.50 per thousand. The letter of April 5, 1917, from the plaintiff to the defendant, is an acceptance of the counter offer.

3. At the argument great reliance was placed upon the fact that the letters did not specify the quantity of each dimension of lumber. This matter is treated exhaustively in the opinion of Mr. Chief Justice McBRIDE in *Ward* v. *McKinley*, 97 Or. 45 (191 Pac. 322), where practically the same question was involved on this point. It is there held that it was

competent to contract for future delivery of lumber, and for the buyer subsequently to select the sizes desired. Something was said, also, relating to the effect of custom. It is permissible as a matter of evidence, without pleading, to explain the meaning of terms used in the contract, under the authority of Section 718, Or. L.:

"The terms of a writing are presumed to have been used in their primary and general acceptation, but evidence is nevertheless admissible that they have a technical, local, or otherwise peculiar signification, and were so used and understood in the particular instance, in which case the agreement shall be construed accordingly."

It is one thing, however, to define the words used in a contract, and quite another to undertake to vary the contract by custom. In the latter case it is necessary that the custom be pleaded. The rule is thus stated in 17 C. J. 516:

"Particular customs or usages relating to a particular locality or trade must, however, according to the general rule, be pleaded by the party seeking to make them a basis of recovery or defense, and cannot in the latter case be shown under a general issue or denial. So also a custom introduced as an affirmative defense or for the purpose of recoupment, it seems, should be specially pleaded. Evidence of a custom or usage which may properly be resorted to as an aid to the interpretation of a contract sued on may, according to some authorities, be admitted for such purpose, although it is local or particular and not specially pleaded; but under the guise of interpretation a trade or local custom or usage which has not been pleaded cannot be admitted to defeat a contract or to vary its express terms, and local commercial usages must be pleaded; and so of a custom to excuse the nonperformance of a duty prescribed by law."

4, 5. It is without dispute as the defendant contends, that where a contract is grounded on offer and acceptance there is no agreement until an offer has been made and accepted in its very terms. For instance, in *Eliason* v. *Henshaw*, 17 U. S. (4 Wheat.) 225 (4 L. Ed. 556, see, also, Rose's U. S. Notes), the offer required the acceptance to be sent by a certain time and by certain specified means of conveyance. Instead of returning the acceptance by the messenger who took the offer, it was sent by mail to a different place, and it was held not to constitute an acceptance. In *Minneapolis etc. Co.* v. *Columbus Rolling Mill Co.*, 119 U. S. 149 (30 L. Ed. 376, 7 Sup. Ct. Rep. 168, see, also, Rose's U. S. Notes), the defendant, answering an inquiry about prices of railway iron, offered to sell from 2,000 to 5,000 tons at a certain price. The plaintiff replied, offering to buy only 1,200 tons; and in an action by the plaintiff to recover damages it was held that, owing to the variation of the amount of rails to be purchased there was no acceptance of the defendant's offer, and hence no contract. Likewise, in *Carr* v. *Duval*, 39 U. S. (14 Pet.) 77, (10 L. Ed. 361, see, also, Rose's U. S. Notes), a case seeking to enforce the specific performance of a contract to purchase land, the acceptance of the seller's offer was required to be made by return mail, but the same was not mailed for twenty days. The buyer made an offer to exchange lands and an offer to buy outright, paying a certain portion in cash and securing the remainder by mortgage. There were other matters relating to terms that were left open to future adjustment. Under these circumstances the court declined to enter a decree for specific performance because the offer to sell imposed no obligation until accepted according to its very terms. These

precedents cited in the brief of defendant before us are clearly distinguishable from the case in hand. Here, the amount of lumber is specified at 250,000 feet. The kind, "general yard stock," is designated. The price offered by the plaintiff was declined, and a greater price specified. The contract is closed by the letter of April 5, 1917, which must be construed in connection with the other letters constituting the correspondence, directing the defendant to enter the plaintiff's order for the precise amount of lumber at the price offered by the defendant. Whether it be the duty of the plaintiff to specify the amount of each dimension, or whether that is in the discretion of the defendant to ship what it chooses of each kind, a failure to comply with the requirement would be a breach of the contract, which is not pleaded. On the issue of whether or not there was a contract, the conclusion of the Circuit Court was not justified by the admitted facts disclosed in the letters. Hence the judgment must be reversed, and the cause remanded for further proceedings. REVERSED AND REMANDED.

McBRIDE, BENSON and HARRIS, JJ., concur.